**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

|                                                     |     |                              |
| --------------------------------------------------- | --- | ---------------------------- |
| **WANDA POSEY**                                     | ]   |                              |
|                                                     | ]   |                              |
| **Plaintiff,**                                      | ]   |                              |
|                                                     | ]   | **CASE NO. 2:12-CV-04135-KOB** |
| **v.**                                              | ]   |                              |
|                                                     | ]   |                              |
| **O'REILLY AUTOMOTIVE STORES,**                     | ]   |                              |
| **INC. d/b/a O'REILLY AUTO PARTS,**                 | ]   |                              |
|                                                     | ]   |                              |
| **Defendant.**                                      | ]   |                              |
|                                                     | ]   |                              |

<u>**MEMORANDUM OPINION**</u>

This matter comes before the court on Defendants' Motion for Summary Judgment (doc. 18) and "Motion to Strike the Affidavits of Wanda Posey and Larry Cowan" (doc. 26). Plaintiff Wanda Posey brings this Title VII and § 1981 suit against Defendant O'Reilly Automotive Stores, Inc., doing business as O'Reilly Auto Parts, claiming race and gender discrimination. Defendant moves for summary judgment, arguing that no disputes of material fact exist and that it is entitled to judgment as a matter of law. For the following reasons, the court finds that Defendant's motion to strike is due to be DENIED, and Defendant's motion for summary judgment is due to be GRANTED.

**I.     MOTION TO STRIKE**

The court must first address Defendant's motion to strike because the admission of the various pieces of evidence at issue bears on the court's statement of facts for purposes of the motion for summary judgment.

1

Defendant moves to strike two of the statements in the Affidavit of Wanda Posey (doc. 23-1) on the basis that they are inadmissible hearsay. As to the first statement, Posey's allegation that former Store Manager Billy Parker told her "that Chambers was sent to the store to get rid of [her]," (doc. 23-1, ¶ 3), Plaintiff responds by arguing that the statement is not offered for the truth of the matter, but merely to establish that "Ms. Posey had a good faith reasonable belief to complain" (doc. 28 at 8). The court will DENY the motion to strike this statement, but will consider the statement only for the limited purpose for which Plaintiff offers it.

As for Posey's account of what Larry Cowan said to her when she called him after she was fired (doc. 23-1, ¶ 41), Plaintiff responds that the statement is admissible as a present sense impression or excited utterance (doc. 28 at 22). The court finds that it is possible that this statement could be reduced to admissible evidence at trial. *See* Fed. R. Civ. P. 56(c)(1). Therefore, the court will DENY the motion and STRIKE this statement.

Defendant's motion to strike also addresses alleged inconsistencies in Ms. Posey's deposition and affidavit testimony. The court finds that while Ms. Posey's affidavit may attempt to provide further explanation of some of the topics covered in her deposition, the testimony is not inconsistent and should not be stricken. The court will DENY the motion to strike as to Paragraph 21 of Ms. Posey's affidavit. (Doc. 23-1, ¶ 21).

The remainder of the statements that the Defendants seek to have stricken are observations and opinions that Ms. Posey and Mr. Cowan make in their affidavits concerning their employment with O'Reilly. As Plaintiff points out in her response, employees are permitted to testify about their observations and opinions of circumstances observed during their employment. *See Mack v. ST Mobile Aerospace Engineering, Inc.*, 195 Fed. Appx. 829, 842

2

(11th Cir. 2006). The court will DENY the motion to strike as to the remainder of the statements it challenges.

## II.    STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure. Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. When a district court reviews a motion for summary judgment, it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–23. Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.*

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not

significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).   In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial*.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added); *see also* Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e) ("The very mission of summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.").  The moving party need not present evidence in a form admissible at trial; "however, he may not merely rest on [the] pleadings." *Celotex*, 477 U.S. at 324.  If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988).  The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury.  *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).  "Even if a district court

'believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices.'" *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013)  (citing *Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006)). The court should not disregard self-serving statements made in sworn testimony simply because they are self-serving at the summary judgment stage, and if the self-serving statements create a genuine issue of material fact, the court should deny summary judgment on that basis. *Id.* at 1253.

Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party.  *Graham*, 193 F.3d at 1282.  The nonmoving party "need not be given the benefit of every inference but only of every reasonable inference." *Id.*  The evidence of the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255.  After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

## III.    FACTS

Plaintiff Wanda Posey, an African-American female, began working for O'Reilly in February 2004. During her employment with O'Reilly she held various non-supervisory positions at different O'Reilly locations in Birmingham, Alabama, and in March 2009 she became the Assistant Manager of Store 1491 in Hueytown, Alabama. (Doc. 22, ¶ 1).  In December 2010, Tommy Mason, District Manager, transferred David Chambers from Manager of Store 2265 in Bessemer, Alabama to Manager of Store 1491 where Ms. Posey worked. (Doc. 22, ¶ 2).

Also in December 2010, shortly after Mr. Chambers's transfer to Store 1491, he and Mr.

Mason held a meeting with store employees.  According to Ms. Posey, "Chambers made a speech to the store about changing how the store operated and improving the store." (Doc. 22, ¶ 3).  Mr. Chambers discussed expectations of employees, policies, and procedures that were critical to effectuating change and improving the store. He told employees that they would all work together starting on a "clean slate," indicating that he was primarily focused on moving the store forward, rather than focusing on what had happened at the store in the past. (Doc. 22, ¶ 3).

According to Defendant, Mr. Larry Cowan, an African-American male employee, asked Mr. Chambers prior to the store meeting about his vacation request, which he had made in September or October of 2010 by handwriting it on the store calendar. Mr. Chambers told Mr. Cowan that he would honor his request because it had already been approved, but that thereafter all employees would be required to submit a vacation request form. (Doc. 19, ¶ 4). Ms. Posey disputes that Defendant can produce any documentation to confirm the dates when Mr. Cowan allegedly took his vacation or made his vacation request. (Doc. 22, pg. 8).

On May 24, 2011, Ms. Posey used Mr. Chambers's "counter number" to process a return. A "counter number" is a code assigned to each employee to be used for processing returns, among other things, so that the store knows which employee processed any given return. (Doc. 22, ¶ 6). The employee counter numbers are not kept secret and are posted on a wall in the store. (Doc. 24, ¶ 3). As a result of Ms. Posey using Mr. Chambers's number, Mr. Chambers contacted Team Member Relations ("TMR") and obtained approval to issue a First and Final Warning to Ms. Posey. He delivered the First and Final Warning to Ms. Posey on May 26, 2011, and Ms. Posey refused to sign the warning. (Doc. 22, ¶ 6).

The next day, Ms. Posey asked Mr. Chambers why she had not been granted her vacation

request for June 3-5, 2011, which she had written on the store calendar in early to mid-May 2011.

Mr. Chambers told Ms. Posey that, per Mr. Mason's directions, an employee's vacation request

would not be considered until the employee had submitted a completed vacation request form.

Ms. Posey claimed she was unaware that she was supposed to have followed the formal vacation

policy. (Doc. 22, ¶ 7). Store 1491 was short-handed at the time because of employee turnovers,

so Mr. Chambers was unsure if he could sufficiently staff the store if Ms. Posey took the

requested vacation. Ultimately, he coordinated the schedule so as to allow her the requested time

off, but, according to Ms. Posey, told her she would have to take the time off as unpaid leave.

Ms. Posey declined the offer. (Doc. 22, ¶ 8).

That same day, May 27, 2011, Ms. Posey told Mr. Chambers that she wanted to complain

about vacation time. Mr. Chambers told her she could send an email using the store email

account. (Doc. 24, ¶ 4). Ms. Posey sent an email to Robert Dumas, the Regional Manager. She

expressed her discontent with Mr. Mason—not Mr. Chambers—having denied her vacation

request, claiming she was unaware that the company required a vacation request form and that

"people got their vacation when they put [their requests] on the calendar . . . ." She also stated: "I

don't think I am getting treated fairly . . . [T]hings have change [sic] around here as if they trying

to make me leave this store [.] I don't know if it [is] my gender or race or maybe both." (Doc. 22,

¶ 9).

Upon receipt of Ms. Posey's email, Mr. Dumas contacted Mr. Mason. Mr. Dumas also

told Tim Shaw, Eastern Division Human Resources Manager, about the email and his intent to

visit the store. Mr. Shaw directed Mr. Dumas to "explore . . . why [Posey] feels she was being

treated unfairly." (Doc. 22, ¶ 10). Before Mr. Dumas went to Store 1491 to meet with Ms. Posey,

however, Mr. Chambers—who had not been told of the contents of Ms. Posey's May 27th email by either Mr. Dumas or Mr. Mason—sent a written statement about Ms. Posey's workplace behavior to Mr. Mason. Mr. Chambers did not issue a corrective action to Ms. Posey, but instead contacted Team Member Relations ("TMR") and received a recommendation from them that he prepare a written statement. (Doc. 22, ¶ 11).

In his June 8, 2011 statement, Mr. Chambers reported that Ms. Posey had "made Store 1491 a very unpleasant place to work for [him] and other team members as well." (Doc. 22, ¶ 12). He stated that he had personally witnessed Ms. Posey encouraging employees and former employees to "take action" against Mr. Chambers, Mr. Mason, and the company and even calling them on the company phone during work hours to tell them who to contact to try to get Mr. Chambers terminated or to file a lawsuit against him. He expressed that Ms. Posey did nothing except "lean on the counter and sell parts" and refused to do tasks he assigned to her, and that he was told by some of Ms. Posey's coworkers that she said she would not do anything Mr. Chambers asked her to do. Mr. Chambers acknowledged that he should have issued her disciplinary actions, but stated that he feared reprisal and continued "harassment" by her if he did so. (Doc. 22, ¶ 12).

Mr. Chambers admits that at some point he became aware that Ms. Posey complained that he was discriminating against her because of her race, her gender, or both. (Doc. 24, ¶ 6).

On June 9, 2011, per Mr. Shaw's direction and with his guidance, Mr. Mason visited Store 1491. He interviewed Ms. Posey, who prepared a statement stating she was not "treated fairly with [her] vacation," and a "coworker put her's [sic] in and she got a vacation day," whereas Mr. Chambers "told [her she could] take off, but won't get paid for it." Ms. Posey also

complained that Mr. Chambers said she did not "communicate with him, and he doesn't with me, and I just feel like I'm not need [sic] her [sic] anymore." (Doc. 22, ¶ 13).

Mr. Mason also interviewed Ms. Posey's subordinate coworkers, all of whom prepared and submitted written statements. Ms. Posey was not present during these interviews and claims she was unaware the interviews were occurring. (Doc. 24, ¶ 9).  Sherry Frost stated that after Ms. Posey's vacation request had been denied, she heard Ms. Posey say that "if David [Chambers] wanted to play dirty she would also" and that Mr. Chambers "needs to go." Ms. Frost also said that Ms. Posey "does not do her job as [Assistant] Manager," and that she refused to do assigned tasks. (Doc. 22, ¶ 14).

Robert Battles said that after Mr. Chambers delivered the First and Final Warning to Ms. Posey, she said "that since David messed with her, she had to get him back, and she used the word 'revenge.'" Battles also stated that once her vacation request was denied, Ms. Posey's "attitude for 'payback' got even worse." Mr. Battles further offered that Mr. Chambers "treats everyone like adults, fairly even handedly," and that "the only sexism or racism that is in this situation is that which [Ms. Posey] has interjected. She is acting like a spoiled brat pitching a tantrum because she didn't get what she wanted." (Doc. 22, ¶ 14).

Keith Breasseale discussed Ms. Posey's refusal to clean up the parking lot, as Mr. Chambers directed her to do. Mr. Breasseale also stated that Ms. Posey was sometimes "hard to work with" and "would say that she didn't care, that's not my job" and that, although Mr. Chambers had tried to help her, she was "really mad" because she was having to close the store that night. He further offered that Ms. Posey had said that she "didn't know who [Mr. Chambers] thinks he is," had threatened to quit, and "has been out to get [Mr. Chambers] for a while." Ms.

Posey acknowledges that Ms. Frost, Mr. Battles, and Mr. Breasseale made these statements, but disputes the accuracy of them. (Doc. 22, ¶ 14).

After reviewing the statements and because of the allegations against Ms. Posey contained within them, Mr. Dumas and Mr. Mason sough approval from Mr. Shaw to issue Ms. Posey a First and Final Warning. Mr. Shaw authorized the First and Final Warning on June 13, 2011 after reviewing the statements himself. (Doc. 22, ¶ 16).

The next day, on June 14, 2011, Parts Specialist Edward Byram also submitted a statement. He said that after Ms. Posey did not receive the requested vacation, he heard her tell Mr. Chambers that "she would call HR on his ass." He also conveyed that he had heard Ms. Posey state on more than one occasion that "it is not her job to do paperwork, and that David Chambers does not know how to make a work schedule." Byram said that Ms. Posey let customers come behind the sales counter, though Mr. Chambers told the employees not to do so because of potential theft concerns, and that she "still eats and drinks on the counter" despite Mr. Chambers having told the employees not to have food and drinks on the counter. Mr. Byram additionally stated that no "matter what David tells her to do she always tried to undermind [sic] his authority or turn other [sic] against him." Ms. Posey acknowledges that Mr. Byram made these statements, but disputes their accuracy. (Doc. 22, ¶ 17).

Both Mr. Dumas and Mr. Mason visited the store on June 14, 2011. Mr. Dumas individually met with Ms. Posey at her request and discussed her complaint about the vacation request being denied and her belief that she was "trying to be forced to quit." (Doc. 22, ¶ 18). During that visit, Mr. Dumas and Mr. Mason also issued Ms. Posey the First and Final Warning for which they had gained approval the day before. They reminded Ms. Posey that it was

10

essential for her to work with her Store Manager, not against him, and that any concerns needed to be relayed through the "proper channels." (Doc. 22, ¶ 19).

On July 18, 2011, Mr. Chambers asked Ms. Posey to have shelving in the break room constructed. The parties dispute whether Mr. Chambers asked Ms. Posey and Mr. Cowan to complete the job, or whether he asked Ms. Posey to tell Mr. Cowan to do the job. (Doc. 22, ¶ 20). When Mr. Chambers arrived at the store the next day, he saw that the shelving had not been assembled. He issued both Ms. Posey and Mr. Cowan a First Warning on July 19, 2011. Ms. Posey refused to sign her disciplinary action notice, which Mr. Cowan signed as a witness. Mr. Chambers did not seek approval to escalate the discipline to termination at that time. (Doc. 22, ¶ 21).

The next day, according to Defendant, Mr. Chambers overheard Ms. Posey tell Mr. Cowan that he should not have signed her disciplinary form as a witness. Based on overhearing this conversation, Mr. Chambers verified what he heard with Mr. Cowan and spoke to a TMR Representative about the matter. (Doc. 19, ¶ 22). Ms. Posey denies that these events occurred (doc. 22, ¶¶ 22-23), but admitted in her deposition testimony that she told Mr. Cowan that if she had been in his position she would not have signed the disciplinary form. (Doc. 20, Exhibit F, pg. 143).

On July 20, 2011, Mr. Chambers sought and obtained approval from Alexis Brown, TMR Representative, to terminate Ms. Posey's employment. Ms. Posey learned of her termination on July 21, 2011. (Doc. 22, ¶ 23). Defendant's documentation of Ms. Posey's discharge indicated that she was being terminated because she instructed a team member not to sign a corrective action form as a witness. (Doc. 20 Exhibit F, depo. ex. 2 at O'Reilly 01121).

11

According to Ms. Posey, Mr. Battles, a Caucasian male, took Ms. Posey's position of Assistant Store Manager after Defendant terminated her. (Doc. 23-2, ¶¶ 3-4).

## IV.    DISCUSSION

### A.    Failure to Exhaust

Defendant argues that any claims relating to practices before July 21, 2011 are barred for failure to exhaust administrative remedies because Plaintiff did not file an EEOC charge within 180 days of the alleged discriminatory act. (Doc. 19, pgs. 13-15). Plaintiff filed her EEOC charge on January 17, 2012. (Doc. 20, Exhibit G). Plaintiff asserts that she bases her discrimination claim on the termination alone and her retaliation claim on the June 14, 2011 First and Final Warning and the July 21, 2011 termination. (Doc. 22, pg. 23 n. 2 & pg. 26 n. 3). Both parties agree that the 180 day statute of limitation applies to the Title VII claims only, not the § 1981 claims. Therefore, the only issue that the court must decide is whether Plaintiff's retaliation claim based on the June 14, 2011 First and Final Warning is barred for failure to exhaust administrative remedies.

"Title VII requires a plaintiff to file a charge with the EEOC no more than 180 days after 'the alleged unlawful employment practice occurred.'" *Stewart v. Booker T. Washington Ins.*, 232 F. 3d 844, 848 (11th Cir. 2000) (quoting 42 U.S.C. § 2000e-5(e)(1)). Therefore, Plaintiff's Title VII claim for retaliation based on the June 14, 2011 events is due to be dismissed for failure to exhaust because Plaintiff filed her EEOC charge more than 180 days after this event. Defendants do not argue that Plaintiff's § 1981 claim for retaliation based on the June 14, 2011 events should be dismissed.

12

**B.**     **Count I & II - Sex Discrimination in Violation of Title VII and Race Discrimination in Violation of Title VII and 42 U.S.C. § 1981**

Ms. Posey claims that she was discriminated against on the basis of her sex and race in violation of Title VII and on the basis of her race in violation of 42 U.S.C. § 1981 when she was terminated on July 21, 2011. The court analyzes claims of race discrimination under § 1981 in the same manner as claims brought under Title VII.  *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). One way to establish a claim of racial discrimination is through direct evidence.  *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 125 F.3d 1390, 1393 (11th Cir. 1997).  If the plaintiff cannot prove discrimination by direct evidence, the plaintiff must establish her prima facie case through the burden shifting analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Nevertheless, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated . . . remains with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 251-52 (1981).

Under the *McDonnell Douglas* framework, the plaintiff "must carry the initial burden under the statute of establishing a prima facie case of racial discrimination." 411 U.S. at 802.  A plaintiff can establish a prima facie case of racial or gender discrimination based on disparate treatment by showing that she belongs to a protected classification, she experienced an adverse job action, her employer replaced her with someone outside of her protected class or treated similarly situated employees outside her classification more favorably, and she was qualified to do her job.  *See Maynard v. Board of Div. of Univs., of Fla. Dept. of Educ. ex rel. Univ. of South Fla..*, 342 F.3d 1281, 1289 (11th Cir. 2004); *see also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004).

13

Defendant concedes that the termination is an adverse employment action, but argues that Ms. Posey cannot make out her prima facie case because she cannot show that Defendant treated a similarly situated employee outside of Plaintiff's protected classification more favorably. Offering evidence of a similarly situated employee, however, is not the only way of establishing a prima facie case; she can also show that her employer replaced her with someone outside of her protected class.

To meet her prima facie case and establish a genuine dispute of fact on this issue, Ms. Posey argues that Eddie Battles, a Caucasian male, replaced her as Assistant Store Manager. She offers the Affidavit of Larry Cowan as evidence on this matter. Mr. Cowan identifies Eddie Battles as a Caucasian male and states: "Eddie Battles was promoted to Assistant Store Manager after Wanda Posey was terminated." (Doc. 23-2, ¶¶ 3-4). Defendant seeks to have this portion of the affidavit stricken; however, the court has already denied that motion. Mr. Cowan's affidavit creates a genuine dispute of material fact on the matter of Ms. Posey's prima facie case; therefore, summary judgment is inappropriate on this basis.

Once the plaintiff establishes her prima facie case, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802.

Once the employer shows a legitimate, nondiscriminatory reason for its decision, the employee must "be afforded a fair opportunity to show that [the employer's] stated reason . . . was in fact pretext." *McDonnell Douglas*, 411 U.S. at 804.  To survive summary judgment, the employee must show "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable

14

factfinder could find them unworthy of credence." *Cooper*, 390 F.3d at 725.  As the Eleventh

Circuit has noted, federal courts "do not sit as a super-personnel department that reexamines an

entity's business decisions." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.

1991).

Defendant offers the following legitimate, non-discriminatory explanation for Ms.

Posey's termination:

> After a thorough investigation, Posey was issued a First and Final Warning on
> June 14 as a result of her poor attitude and insubordination. That disciplinary
> action explicitly directed Posey to work with Chambers, not against him, and
> cautioned that additional misconduct could lead to termination. Barely a month
> later, Posey *again* willfully refused to perform a task assigned to her by Chambers
> when she refused to construct the shelves. Later, Chambers overheard (and then
> verified by written statement from Cowan) Posey tell Cowan he should not have
> signed *her* disciplinary action as a witness. Specifically, Posey told him, "if I was
> him, it if was me, I wouldn't have signed it." (Exhibit F, pp. 143-145). As Posey
> had engaged in yet *another* incident of insubordination, Chambers then sought
> and obtained approval from TMR to terminate Posey. Insubordination and/or
> failure to perform assigned job duties is a legitimate, non-discriminatory reason
> for an employer's issuance of a disciplinary action.

(Doc. 19, pg. 24-25). O'Reilly's documentation of Ms. Posey's discharge indicated that she was

being terminated because she instructed a team member not to sign a corrective action form as a

witness. (Doc 20, Exhibit F, depo. ex. 2 at O'Reilly 01121).

Defendant argues that Ms. Posey has not shown that O'Reilly's legitimate, non-

discriminatory reasons for her termination were pretextual. As evidence of pretext, Plaintiff

argues that she was subjected to "a demonstrable pattern of harassment based on her race and/or

gender" and essentially reviews her version of the facts, claiming that Mr. Mason intentionally

gathered statements critical of Ms. Posey rather than investigating her complaint of

discrimination and that Mr. Chambers deliberately put Ms. Posey in difficult situations by

15

ordering her to process a questionable return, requiring her to clean the parking lot at night in an unsafe area, and falsely claiming that Ms. Posey had refused to assemble shelves as directed. (Doc. 22, pg. 28-31).

Although Ms. Posey discusses a plethora of events in her pretext argument, she does not meet Defendant's reason of insubordination head on. She argues that "[Mr.] Chambers falsely claimed that Ms. Posey had 'refused' to do the task and had been insubordinate, none of which was true." The Eleventh Circuit has held that a plaintiff's "self-serving assertion that she was not insubordinate does not alone establish that she was [discriminated against] . . . Whether [a plaintiff's] conduct was insubordinate is not an issue for this Court to referee." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1092 (11th Cir. 2004). Furthermore, despite Ms. Posey's blanket denial, her deposition testimony reveals that she admits to telling Mr. Cowan that if she had been in his position she would not have signed the disciplinary form. (Doc. 20, Exhibit F, pg. 143).

The court finds that such a statement—indicating to a subordinate that he should not have followed the directions of his superior—is insubordination and that Ms. Posey offers no evidence to show that this event is a pretext for discrimination. She does not show that other employees outside her protected class committed similar acts of insubordination and yet were not fired. Neither does she present any argument that insubordination is not a legitimate reason for termination, nor can she. *See Austin v. City of Montgomery*, 196 Fed. Appx. 747 (11th Cir. 2006) (finding that the City's decision to terminate the employee for insubordination was not pretext for racial discrimination in violation of Title VII and § 1981 where employee insulted a supervisor in front of other employees and did not point to another employee who engaged in similar behavior but was treated more favorably).

16

Because Ms. Posey is unable to show that O'Reilly's legitimate, non-discriminatory reason for terminating her—her insubordination—is pretextual, the court will GRANT summary judgment for Defendant as to Counts I and II of Ms. Posey's complaint.

### C.      Count III - Retaliation in Violation of Title VII and 42 § U.S.C. 1981

Ms. Posey claims that she was retaliated against in violation of Title VII and 42 § U.S.C. 1981 when she was disciplined on June 14, 2011 and when she was terminated on July 21, 2011. The court has already dismissed the Title VII claim for retaliation based on the June 14, 2011 discipline for failure to file a claim with the EEOC, but the § 1981 claim for that event remains, as well as the Title VII and § 1981 claims of retaliation based on termination. As with discrimination claims, retaliation claims under Title VII and § 1981 are governed by the same framework of law. *Davis v. Coca-Cola Bottling Co. Consol*., 516 F.3d 955, 978 (11th Cir. 2008).

The court analyzes claims of retaliation for engaging in a protected activity under the *McDonnell Douglas* burden-shifting framework. *Holifield v. Reno*, 115 F.3d 1555, 1564-66 (11th Cir. 1997).  Under that framework, the plaintiff "must carry the initial burden under the statute of establishing a prima facie case" of retaliation. *McDonnell Douglas*, 411 U.S. at 802.

To establish a prima face case of retaliation under Title VII, "a plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two events." *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 (11th Cir. 2000) (internal quotation marks omitted).

Defendant argues that Ms. Posey did not engage in statutorily protected activity because her email complaint referencing race and gender discrimination was not supported by any facts

17

and because she could not explain why she believed she had been discriminated against when she met with Mr. Dumas on June 14, 2011. (Doc. 19, pgs. 25-28). Ms. Posey simply responds by pointing to her written complaint of race and gender discrimination. (Doc. 22, pg. 26).

To constitute "statutorily protected expression," a plaintiff's complaint must meet two requirements. First, it must put the employer on notice that the plaintiff is opposing a practice made unlawful by Title VII by explicitly or implicitly conveying a belief that the practice constitutes unlawful employment discrimination. *See Murphy v. City of Aventura*, 383 Fed. Appx. 915, 918 (11th Cir. 2010).  Second, the complaint must be based on a "good faith reasonable belief" that the plaintiff's employer engaged in unlawful discrimination, but the plaintiff need not actually establish an underlying discrimination claim. *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1187 (11th Cir. 2001).

Ms. Posey's May 27, 2014 put Defendant on notice that she believed she was being discriminated against because she explicitly stated that she believed she was being targeted because of her race or gender. The question, then, is whether she had a good faith belief that she was the subject of unlawful discrimination. The undisputed facts in this case show that the May 27, 2014 email specifically addressed the alleged denial of Ms. Posey's vacation request; therefore, the discrimination complaints should be viewed in this context and as relating to this event.

Although the facts surrounding the alleged denial of Ms. Posey's vacation request are highly disputed by the parties, Ms. Posey has proffered evidence that she was not given paid time off based on her vacation request that she wrote on the store calendar and that Mr. Cowan, an employee outside her protected class, obtained paid leave using this same method of requesting

18

time off.[1] (Doc. 20, Exhibit F, pg. 73). Although the evidence is Ms. Posey's own testimony regarding Mr. Cowan, the court cannot disregard it at the summary judgment stage just because it is self-serving. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013). Therefore, based on this evidence, the court finds that Ms. Posey had a good faith reasonable belief that O'Reilly engaged in discrimination and, thus, her May 27, 2011 email qualifies as statutorily protected expression. Because Defendant does not challenge the other elements of Ms. Posey's prima facie case, the court finds that Ms. Posey has established her prima facie case on her retaliation claim.

As the court already noted, once a plaintiff has established her prima facie case under the *McDonald Douglas* framework, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802.  Once the employer shows a legitimate, nondiscriminatory reason for its decision, the employee must "be afforded a fair opportunity to show that [the employer's] stated reason . . . was in fact pretext." *McDonnell Douglas*, 411 U.S. at 804.

Defendant argues that Ms. Posey has not shown that O'Reilly's legitimate, non-discriminatory reasons for her discipline and termination were pretextual. (Doc. 19, pgs. 29-30). The court will examine each of the allegedly retaliatory employment decisions in turn.

---

[1]Defendant's brief includes various arguments as to why Mr.  Cowan does not qualify as a similarly situated employee for purposes of establishing a prima facie case of discrimination. The court does not find that Mr. Cowan *is* a similarly situated employee, as such a finding is unnecessary here, but rather finds that the circumstances surrounding the vacation time incident are sufficiently similar for Ms. Posey to have a good faith, reasonable belief that she was being discriminated against.

**1. June 14, 2011 Disciplinary Action**

On June 14, 2011, Mr. Mason and Mr. Dumas issued Ms. Posey a First and Final
Warning as a result of the negative findings about Ms. Posey that emerged from Mr. Mason's
interviews with other employees. Defendant argues that it issued the First and Final Warning
"after a thorough investigation verified – as substantiated by multiple employees – that [Ms.]
Posey had been insubordinate and a problem-maker at Store 1491" and that a "willful refusal to
perform an employee's assigned job duties is a legitimate, nondiscriminatory reason for
disciplinary action." (Doc. 19, pg. 21). Ms. Posey responds that Defendant subjected her to a
"demonstrable pattern of harassment . . . in retaliation for her complaints," citing various
incidents such as Mr. Chambers's allegedly refusing her vacation request, Mr. Mason's allegedly
"gather[ing] statements critical of Ms. Posey," and Mr. Dumas and Mr. Mason telling Ms. Posey
that her future complaints needed to go through "proper channels." (Doc. 22, pg. 28-29).

Although Ms. Posey references these various events, she fails to address head on the
legitimate reason for the discipline offered by Defendant: that she was insubordinate, was a
problem-maker, and refused to perform her assigned duties. While she alleges that Mr. Mason
was intentionally soliciting critical statements from other employees, the undisputed evidence
shows that Mr. Mason must have asked the employees about Ms. Posey's discrimination claims
because at least one of them, Mr. Battles, specifically addressed the topics of sexism and racism.

Furthermore, while Ms. Posey argues that the accusatory statements from her coworkers
are untrue, she does not allege that O'Reilly management pressured the employees to make
critical statements or that they only talked to certain employees or that they did anything else to
manipulate the results of the investigation. Even if the coworkers' statements were untrue,

20

O'Reilly had no reason to question their truthfulness and was justified in disciplining Ms. Posey based on those statement. *See Pate v. Chilton County Bd. of Educ.,* 853 F. Supp. 2d 1117, 1135 ("[I]f the employer mistakenly, but in good faith, believes that the employee has done wrong, reliance on such a mistaken belief is sufficient to disclaim any discriminatory animus because the plaintiff will have failed to show that it was a discriminatory reason the employer relied on for the action, rather than a mistaken reason.").

Because Ms. Posey fails to establish that the legitimate, nondiscriminatory reason offered by Defendant for her discipline is pretextual, the court will GRANT Defendant's motion for summary judgment as to the retaliation claim based on the June 14, 2011 discipline.

### 2. July 21, 2011 Termination

As previously discussed, Defendant cites Ms. Posey's insubordination as the reason for her termination and Ms. Posey fails to meet this reason head on and show that it is pretext for retaliation. As such, the court will GRANT Defendant's motion for summary judgment as to the retaliation claim based on Ms. Posey's termination.

## V.    CONCLUSION

For these reasons, the court will GRANT Defendant's motion for summary judgment and ENTER JUDGMENT for the Defendant as to all claims.

DONE and ORDERED this 31st day of July, 2014.

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE